UNITED STATES DISTRICT COURT
District of Maine

| | |
|---|---|
| CORTNEY E. WOOD as PERSONAL REPRESENTATIVE FOR THE ESTATE OF LIONEL J. NAULT,<br><br>Plaintiff<br><br>vs.<br><br>TTS TREE SERVICE, LLC;<br><br>Defendant | CASE NO. 26-cv- |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

1. Lionel J. Nault was driving his motorcycle on Deer Isle on September 17, 2023, when he crested a blind hill on Burnt Cove Road.

2. Upon cresting the blind hill, he saw approximately 200 feet ahead of him a utility service harvester truck operated by TTS Tree Service in his travel lane, positioned in the direction as appearing to be traveling along the same travel lane and in the same direction as Lionel, without any signs, work lights, warnings prior to the blind hill, or other indicators that it was, in fact, stopped and stationary in the middle of the travel lane.

3. Lionel realized that this utility harvester truck was stopped in his travel lane and applied the brakes to attempt to avoid imminently colliding with the truck, but in braking he lost control of the motorcycle.

4. Lionel and the motorcycle began tumbling straight toward the utility harvester truck, and Lionel suffered a number of broken bones and injuries prior to his head and neck ultimately colliding with the rear drivers' side dual wheel tires of the utility harvester truck.

5. Lionel's neck was shattered, rotating his head violently, and Lionel died from the impact with the utility harvester truck.

6. There was no medical care that reasonably could have been provided to save Lionel's life.

7. Prior to Lionel cresting the blind hill, the driver of the utility harvester truck for TTS Tree Service, Ivonne Santiago, had intentionally parked the utility harvester truck in the travel lane to assess whether they were in the right location for a utility tree line inspection requested by Versant Power.

8. Ms. Santiago spoke to police on scene, who informed the police that she was fully stopped in the 45-mph road travel lane stationary for approximately 60-seconds on the opposite side of the blind hill she had just crested prior to Lionel impacting the truck, which she did not witness, but heard from inside the cab of the utility harvester truck.

9. Lionel's claims are for wrongful death to include a separate claim for conscious pain and suffering for pre-incident impending fear of serious bodily injury, fear of imminent or impending death, and the various non-lethal injuries incurred in the seconds immediately preceding contact with the rear dual wheels of the utility harvester truck which most likely caused a near instant death upon impact.

**PARTIES AND JURISDICTION**

10. Decedent, Lionel J. Nault was a resident of Deer Isle, County of Hancock, and State of Maine.

11. Plaintiff Cortney Wood is a resident of Deer Isle, County of Hancock, and State of Maine, and is the Personal Representative of the Estate of decedent Lionel J. Nault, for which the Estate was established within the Probate Court for the County of Hancock under Docket No. 2023-431 on October 23, 2023.

12. Upon information and belief, Defendant, TTS Tree Service, LLC, formerly located in the Town of Canton, County of St. Lawrence, State of New York, was aquired on December of 2024 and absorbed by Xylem, a corporation licensed in the State of Virginia[1].

13. The Court has jurisdiction over the action pursuant to 4. M.R.S.A. §105.

14. Venue is proper in accordance with 14 M.R.S.A. §501.

## FACTS RELATED TO ALL COUNTS

15. On September 17, 2023, in the Town of Deer Isle, County of Hancock, and State of Maine, Lionel J. Nault was the registered owner of a black 1999 Kawasaki Motorcycle bearing a license plate number of 45MJ, with the VIN JKAZXDP10XA036990.

16. Mr. Nault possessed an active ME Class C license, with a motorcycle endorsement, bearing license number 0413321.

---

[1] Prior to December 2024, TTS Tree Services, LLC was a corporation licensed in the State of New York. It existed at the time of the incident independent of Xylem but was acquired by Xylem prior to the commencement of this lawsuit and no longer exists as a stand-alone legal entity. The parties have stipulated that TTS Tree Services is the legal entity responsible for this matter, and that the actions of its employees and agents are their responsibility under the legal theory of *respondeat superior* liability.

17. On September 17, 2023, TTS Tree Service, LLC, out of Canton, New York was the registered owner of a white 2019 International Harvester truck bearing a 45055MM license plate number, with the VIN 1HTMMMMN0KH697972 (hereinafter "the Harvester Truck").

18. At all relevant times, TTS Tree Service was a subcontractor hired to perform work at the direction of Versant Power, the contractor, within the State of Maine, at various locations.

19. Versant Power entered into a contractual agreement with TTS Tree Service to perform specific tasks related to assessment and/or tree removal services along powerlines within the State of Maine, including on Deer Isle.

20. All work assigned was done at the direction of Versant Power, including the assessment and work to be completed and performed on Deer Isle.

21. On September 17, 2023, Defendant Ivonne Santiago, of Hamilton, Ohio, who was 31 years old at that time, had an active Ohio driver's license with license number TS582604.

22. Ms. Santiago was working an assignment for her employer, TTS Tree Service, as the lone operator of the Harvester Truck on Deer Isle.

23. Ms. Santiago was assigned to a work location somewhere within the vicinity of 241 Burnt Cove Road in Stonington, Maine.

24. It is unknown to the Plaintiff at this time whether the Defendant had previously performed any work or visited Deer Isle previously.

25. Burnt Cove Road was at that time, and still is today, a two-way public road.

26. Burnt Cove Road has a posted speed limit of 45 miles per hour.

27. Ms. Santiago was aware of her obligations as an employee of TTS Tree Service and performing work for Versant Power that she had to abide by all industry standards, OSHA requirements, and abide by all Maine State laws at the time of her work on Deer Isle.

28. At that time, Maine Statute 29-A M.R.S.A. §2068(1)(A) explicitly prohibited parking on public ways: "A person may not park a vehicle, whether attended or unattended, on the travelled portion of a public way outside of a business or residence district when it is practicable to park off of the way."

29. Also in effect at that time was Maine Statute 29-A M.R.S.A. §2068(1)(B) which explicitly prohibited parking on public ways: "A person may not park a vehicle on a public way unless:

(1) A clear and unobstructed width of at least 10 feet is left for free passage of other vehicles on the way; and

(2) An approaching vehicle has a clear view of the way 300 feet beyond the parked vehicle, before approaching within 200 feet of it.

30. At the time of the incident, Defendant were all aware of their OSHA requirements and ANSI requirements for performing any work on public ways.

31. At the time of the incident, Defendant were aware of the importance of compliance with the laws of the State of Maine, OSHA, and ANSI, for the safety of themselves, their workers, and the general public.

32. At approximately 1:05 PM, Ms. Santiago parked the Harvester Truck in the southbound lane of 241 Burnt Cove Road.

33. Ms. Santiago was performing storm-related power line inspections for Versant Power, through her employer, TTS Tree Service.

34. At that time, Ms. Santiago was performing work that was within the scope of her duties with TTS Tree Service, as contracted and at the direction of Versant Power.

35. This Google Maps photograph from May of 2023 shows the approximate area where the Harvester Truck was parked:



36. The photograph shows the back of a 'hidden driveway' yellow warning road sign in the northbound side of the road, and a gravel road coming off of the southbound travel lane.

37. The Harvester Truck was parked on the backside of a blind hill, meaning the crest of the hill in both directions obstructs the view of traffic from seeing what is coming up in the roadway ahead of the crest of that hill.

38. The Harvester Truck was parked facing southbound, meaning that it had driven over the blind hill southbound before coming to its parking spot in the southbound travel lane.

39. Ms. Santiago admitted parking the truck in the roadway to the police.

40. Ms. Santiago admitted to being inside the truck at the time of the accident.

41. The southbound travel lane does not become visible on this road until reaching the driveway of 241 Burnt Cove Road, as illustrated from these screenshots from Google Maps:





42.     This screenshot of Google Earth shows the distance from the location of the southbound travel lane at the driveway of 241 Burnt Cove Road on the crest of the blind hill to the location before the gravel road where the Harvester Truck was parked:





43. The distance measures approximately 73.57 meters, which is approximately 241 feet, from the crest of the hill where the roadway was visible to the parked Harvester Truck.

44. These photos show the location of the Harvester Truck in the roadway, from two different angles:





45. The Harvester Truck parked in a way that nearly blocked the full width of the travel lane on the downward side of the blind hill.

46. As can be seen from the first black and white photograph, the Harvester Truck obscures all views of the roadway and oncoming traffic from the location that the photograph was taken.

47. The photographs and investigation confirmed there were no flags, warnings, signs, cones, or other indicators that the truck was blocking the roadway ahead as traffic approached the blind crested hill southbound on Burnt Cove Road.

48. The photographs also confirm that there was nothing to provide any advanced warning to any vehicle traveling southbound along Burnt Cove Road that the Harvester Truck was nearly entirely blocking the southbound travel lane.

49. At approximately 1:05 PM, Mr. Nault was traveling South on Burnt Cove Road on his motorcycle.

50. Mr. Nault was wearing a motorcycle helmet.

51. As a resident of Deer Isle, Mr. Nault had driven on that road many times before in the past.

52. After cresting the hill passing 241 Burnt Cove Road, Mr. Nault saw the Harvester Truck in his travel lane.

53. Mr. Nault hit the rear brake of his motorcycle and lost control of it.

54. The motorcycle skidded uncontrollably, hitting the ground and rolling, ejecting Mr. Nault.

55. Mr. Nault careened toward the parked Harvester Truck without any ability to stop himself or change his direction.

56. Mr. Nault's head struck the rear drivers' side dual wheels of the Harvester Truck, causing his head and neck to become a pivot point at which his body flung around violently approximately 200 degrees in the opposite direction.

57. Mr. Nault's cervical spine fractured, causing extensive damage to his neck, leading to a finding of flaccidity in the cervical spine.

58. Mr. Nault sustained a closed head injury leading to bleeding in his brain.

59. Mr. Nault sustained a fracture to his thorax with palpable deformities anteriorly over the sternum, a fracture of his left hip, and internal bleeding in his chest and abdomen.

60. Mr. Nault died at the scene because of the injuries he sustained from colliding with the parked Harvester Truck in the middle of Burnt Cove Road in the town which he lived.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE AGAINST TTS TREE SERVICE, LLC

61. Plaintiff repeats and incorporates each allegation and averment contained in the above paragraphs of this complaint as though fully set forth herein.

62. At the time of the incident. Ms. Santiago was an employee of TTS Tree Service and performing work within the scope of her assigned and trained duties.

63. Under the doctrine of *respondeat superior*, TTS Tree Service is vicariously liable for the tortious acts (negligent acts or omissions) of its employees when those acts occur within the scope of their employment and are intended to benefit the employer.

64. The photographs taken from the scene combined with the Google Earth and Google Maps photographs confirm that the Harvester Truck was parked in the southbound travel

lane of Burnt Cove Road despite there being a gravel road within a practicable distance of its location.

65. As a licensed operator of a motor vehicle in the State of Maine, Ms. Santiago owed a duty to the general public, including the Plaintiff, to operate her vehicle safely and according to the laws and rules of the State of Maine.

66. As an employee performing tree service work on a public way, Ms. Santiago also had a legal duty to uphold industry safety standards and comply with all safety requirements that are associated with the work she was assigned to perform on September 17, 2023.

67. This included preventing reasonably foreseeable hazards as much as practicable.

68. Ms. Santiago violated State law, OSHA safety regulations, and ANSI best practices in parking the Harvester Truck on Burnt Cove Road within the southbound lane.

69. Ms. Santiago blocked the southbound lane leaving less than 10 feet of space within the travel lane for vehicles to safely pass.

70. Ms. Santiago stopped the Harvester Truck in the southbound travel lane after passing what she knew, or what she had reason to believe, or what she had opportunity to observe was a blind hill on Burnt Cove Road.

71. Ms. Santiago chose to park the vehicle on the public roadway, in the southbound travel lane, despite there being a gravel road within practicable distance of the location which she decided to park the Harvester Truck.

72. This decision placed the general public at risk of harm, including risk of causing a vehicular collision in the southbound roadway of Burnt Cove Road.

73. Ms. Santiago's decision and actions were reasonably foreseeable that this scenario could cause a collision on the public roadway.

74. Ms. Santiago had the time, opportunity, and ability to safely park the vehicle within the gravel road rather than in the southbound travel lane.

75. Defendant breached the duty owed to the general public, including the Plaintiff, by failing to take reasonable precautions to prevent injury to others in her decision to park the Harvester Truck to perform her scope of work.

76. Defendant breached the duty owed to the general public, including the Plaintiff, by failing to provide any advanced warnings to oncoming traffic that the Harvester Truck was parked in the roadway on the backside of a blind hill, blocking the roadway.

77. Defendant breached the duty owed to the general public, including the Plaintiff, by failing to remain aware of the risks that her conduct created to the general public.

78. The presence of the Harvester Truck in the southbound travel roadway was not known to the Plaintiff prior to his cresting the hill at 241 Burnt Cove Road.

79. As a result of seeing the Harvester Truck blocking the southbound travel lane, the Plaintiff attempted to stop his motorcycle to avoid the Harvester Truck, but lost control of the motorcycle, ultimately colliding with the rear drivers' side tires of the Harvester Truck and causing his untimely death.

80. As a result of the negligent, reckless, and/or careless conduct of Ms. Santiago, the Harvester Truck, and but for its presence in the southbound travel lane, Plaintiff would not have suffered his untimely death.

81. This was the direct and proximate cause for Plaintiff to suffer catastrophic injuries, fear of imminent serious bodily injury, and fear of imminent death prior to his passing.

82. As a result, the Plaintiff suffered damages from which his estate is entitled to compensation under the laws of the State of Maine.

83.     In this case, the actions of Ms. Santiago were clearly within the scope of her employment with TTS Tree Service as she was attempting to perform the job she was hired to do, which was to locate a site for inspection as part of her employment, when she negligently parked the Harvester Truck within the southbound travel lane of Burnt Cove Road.

84.     In this case, the actions of Ms. Santiago were for the benefit of the employer, TTS Tree Service, to further the businesses interests, and the employee was acting with the intent to fulfill the job responsibilities and assignments of TTS Tree Service and the contractor, Versant Power.

85.     As a result, TTS Tree Service is vicariously liable to the Plaintiff for the negligent, reckless, and/or careless acts of their employee, Ms. Santiago.

86.     This negligent, reckless, and/or careless act was the direct and proximate cause for Plaintiff to suffer catastrophic injuries and death.

87.     As a consequence of the wrongful conduct of its employee while performing work within the scope of her employment and for the benefit of TTS Tree Service, Defendant is liable to Plaintiff for damages in an amount to be determined by the Jury, together with interest and costs, for all possible economic and non-economic damages permitted under the law in accordance with Maine's wrongful death statute, 18-C M.R.S.A. §2-807(2).

<u>**COUNT II**</u>
**WRONGFUL DEATH – CONSCIOUS PAIN AND SUFFERING OF LIONEL NAULT AGAINST TTS TREE SERVICE, LLC**

88.     Plaintiff repeats and incorporates each allegation and averment contained in the above paragraphs of this complaint as though fully set forth herein.

89.     Defendant's breach of duty directly and proximately caused Plaintiff to suffer an untimely death which was preceded more likely than not by a period of conscious pain and

16

suffering, including but not limited to injuries from personal injury, fear of imminent serious bodily injury, and fear of imminent or impending death.

90.  As a consequence of the wrongful conduct of its employee while performing work within the scope of her employment and for the benefit of TTS Tree Service, Defendant is liable to Plaintiff for damages in an amount to be determined by the Jury, together with interest and costs, for all possible economic and non-economic damages permitted under the law in accordance with Maine's wrongful death statute regarding conscious pain and suffering, 18-C M.R.S.A. §2-807(3).

### REQUEST FOR JURY TRIAL

The Plaintiff requests a Jury Trial on all the above Counts.

### RELIEF SOUGHT

WHEREFORE, the Plaintiff demands Judgment in their favor against Defendant, jointly and severally, for all sums due for direct and indirect damages and any and all relief that may be afforded under Maine law, including costs, interest, and all other relief whether articulated in this Complaint or not that the law may allow.

Dated at Portland, Maine this 10th day of March, 2026

*/s/ Peter Richard*
_____
Peter Richard, Esq. Maine Bar #4674
GARMEY LAW
482 Congress Street, Suite 402
Portland, ME 04101
(207) 899-4644
prichard@garmeylaw.com